Our first case on the call of the docket today, Tuesday, September 20, 2011, excuse me, is agenda number 13, case number 111, 886 People v. Andrew Young. Counsel for the appellant, please proceed. Good morning, Your Honors, Counsel. I represent the people of the State of Illinois. May it please the Court. Your Honors, the statute under which defendant was convicted for brazenly standing 443 feet out on the street from High Mountain Church and Preschool selling heroin to an undercover police officer, the statute establishes that any person who commits this act within 1,000 feet of the real property comprising any school is guilty of a Class I felony. We contend that the statute means what it says. The rules of statutory construction set forth by this Court establish that when a term is left undefined in a statute, the reviewing court must assume that the legislature intended it to have its ordinary and popularly understood meaning. That a preschool is commonly, ordinarily, and plainly understood to be a school is not in dispute. Defendant has not contended this. The appellate court did not find otherwise. In fact, no Illinois court has made this finding. In fact, every Illinois court who has been faced with interpreting a statute where the term school was left undefined has been able to easily define the term using a dictionary and case law and determine that a preschool is indeed a school. And it should be no different here. This Court should be able to rely on the dictionary and case law to define the term school and determine that it is commonly understood to include a preschool. And the term school is not ambiguous and the determination that a preschool is a school is not absurd. And it is under these circumstances where there is no ambiguity and no resulting absurdity that this Court has established that it will not intervene to correct an alleged oversight. In fact... Ms. Jacobs, since Goldstein and Owens already has interpreted the statute and these cases were decided more than a decade ago, can we assume that the legislature has really conceded to this interpretation? In other words, does the term school used in the section now have a settled definition? I don't believe it does. I don't believe that legislative acquiescence has taken place in this case. Indeed, in Goldstein and Owens, the issue there was a college. Whether or not a college was a school within the statute. And when Goldstein was interpreting, what they did was use a broad definition. They did not have a limiting definition that went against the express intent of the statute. So the legislature did not have to step in in terms of making any adjustments in terms of whether or not a college is a school. But the legislature has not been alerted thus far to a situation where somebody is challenging whether a preschool is a school. So I... I'm sorry, finish your sentence. Would your interpretation include driver's school as well? Oh, I don't believe it would at all. And in fact, while it's true that there are types of schools that possibly could be interpreted as... I think what you're trying to say is if a driving school or truck driving school, which we've seen in the cases, would be suggested that it would be absurd to find them a school. But first of all, even if it were true that if I were up here trying to tell you that a truck driving school is interpreted as a school and you found that to be absurd, it does not follow that a preschool is found to be... What about some of the nursery schools? Three of us have offices at 160 North LaSalle in Chicago. And on the second floor and the 19th floor that's mainly used, or the 21st floor, that's mainly used for nursery schools, very few people are even aware that the school is there. You walk in the lobby and you do not become aware that it's a nursery school. With that, if drugs are sold in the restaurant on the first floor over coffee, is that within 1,000 feet? Is that within your interpretation? I don't believe there's... The legislature made a distinction between vertical 1,000 feet and horizontal 1,000 feet. So, no, I think it's within 1,000 feet. But the fact that it's not known generally that this is a nursery school on the premises. I don't think the legislature had set out at any point that the defendant who chooses to sell heroin has to know that the school is there. In a lot of law offices, and I believe companies, some facilities are provided for preschool kids, even sometimes on a temporary basis, maybe not on a permanent basis. So any drug transaction, would that fall within your definition? Any drug transaction that would occur on the premises of an office that's dedicated to other purposes, practice of law, but some facilities are provided for nursery care for employees, not only in law firms, but any kind of office, factories. Would that fall within your definition? I believe that the legislature used the broad term, any school, and basically it is up to them to limit it, and it is not up to... Based on the rules of statutory construction where the term preschool just cannot be seen as being absurd, that it comes into the definition of school, that I just don't believe that it would be the position of this court to limit a term. It would be up to the legislature then if they felt that that took the term too broad to limit it. But the rules of statutory construction are very clear that unless we have ambiguity or an absurdity, that we do need to leave it up to the legislature to correct anything they want to correct, and that's just not when the courts would step in at that point. Ms. Jacobs, with regard to legislative intent, though, it seems like the legislation in the debates, the targets of the legislation was school-age children who might be targets also for gang and drug selling. So it seems kind of absurd that preschool children, who are usually brought back and forth to their daycare or preschool, would be targets for this kind of drugs and gun selling. Well, my first point is that I am not conceding in any way that we should be at this point looking at the debates. The term is not ambiguous, and therefore my position is that we should not even... We're not in a position to even look beyond to an outside tool of statutory construction such as debates. However, if we were to look at those debates, I do believe that the legislature... But you'd like us to look at the dictionary. The dictionary is... This Court, in a slew of recent cases, has established that that has used judicial restraint in a slew of recent cases, and has, in fact, used the dictionary when you were faced with a term that was undefined, used a dictionary in case law, finding a term to be unambiguous, and declined, overtly declined the defendant's invitation to look to outside tools of interpretation. This Court did it in People v. Cardamone in 2009 for the definition of emotional distress and mental anguish. People v. Diggins, 2009, for the definition of the word case, used a dictionary, did not resort to legislative history, even though the defendant asked you to. People v. Davidson, 2009, defining the word poisonous gas with a dictionary. People v. DeFlippo used the plain language. People v. Connick, People v. Christensen, over and over and over, this Court goes to a dictionary, and that is what this Court has determined is the first step to define the plain language of the statute, and to define the popularly understood meaning of the word. But to get back to your question, I do believe that when, as I stated, not that I'm conceding we should be looking at the debates, but if you do look at the debates, the general comments by the legislatures indicate that there's no distinction between the youngest, most vulnerable children, school children in Illinois, and those one, two, or ten years older when it comes to the fact that their goals were to try to get rid of drugs in schools, the health and welfare of youth, and I'm quoting, the health and welfare of the youth throughout the state of Illinois, reverse the current trend of drug, alcohol use and abuse by school-age individuals, prevent individuals, particularly our youngsters in the state from being tempted by the influences. Yes. You mentioned that term in your brief as well, one of the most vulnerable sectors of our community. Yes. Are you aware of any case in which someone has been convicted of selling drugs to a preschooler? People versus Day, I think it was a third district appellate court case. Oh, I'm sorry, to a preschooler? I thought you meant next to a preschooler. In my research, no, I'm not aware of that, but I don't. I just wanted your comment on the vulnerability. Are they vulnerable to drug dealers since they're, as already mentioned, supervised at all times and most likely carry no money? I absolutely believe that a preschooler, even if they are holding the hand of mom on this side and dad on this side, and if they are walking past drug transactions every single day when they go to school and they are walking past criminal activity and seeing drug users intoxicated, wandering around, people selling drugs and all this criminal activity, I think that has a complete influence on how they view the world to make them predisposed. So it's a vulnerability separate, apart from buying drugs, actually. Absolutely, and I don't think that the legislatures in their debates were only concerned with buying drugs. They were concerned with the whole culture of this going on, where little eyes, little very influential eyes would be watching what's going on, and I mean, the worst thing in the world that we would want is this. We have a restriction of 1,000 feet. You're talking about neighborhoods. Yes. A kid walks through a whole neighborhood before he enters that 1,000 foot radius. How are they protected then? I believe that, I mean, that's... They're exposed to the same things that you just mentioned. They see things and things could impact. You know, it's up to the legislature to protect these kids as much as they can. They have established this law to protect them, at least around what should be the most, you know, sanctified place where they go every day to their school to learn, to have an environment where they feel comfortable and not threatened and not wondering about all this criminal activity. Was there evidence introduced, Ms. Jacobs, that High Mountain Preschool, is that the name of it? High Mountain? Is that the name of the preschool? High Mountain Church and Preschool, yes. Okay. Was there evidence that there was instruction given at High Mountain? And what I'm getting at is, was it actually a preschool with instruction or could it have been classified as a daycare center? This point in this case was never contested that it was a preschool. It was accepted by all. It's never, ever been contested. And I believe at this point, with the posture that we're in now, in the light most favorable to the state, that it is, there's no question that we would consider that it would be a preschool. But, no, it was not contested, and, therefore, there was no evidence necessary. That's important, right? Because you indicate that the dictionary definition of school is a place where instruction is given, and you discuss the Bailey case, which distinguished between daycare centers and preschools. Yes, and so did Pasachal, and so did Hilgendorf, yes. So your position is that it was virtually stipulated that this was a preschool that gave instruction? This is my position because it was never contested in this case. And, again, at this point, where we do view the evidence in the light most favorable to the state, when you look at the fact that it's called a high mountain preschool, at this point is not the point where we would need to debate that. But doesn't the state have the burden? Didn't you have the burden to prove each element of this case? We do, and we do have the burden to prove it, and that was never contested. It was never contested it was a preschool. And at this point we are viewing an entity called high mountain preschool, and certainly at this point, uncontested, that has not been an issue in the case. I did want to say, getting back to the vulnerability of the children, again, in their learning environment, I do think it's, I do think that the legislators did intend that even just the contact, the atmosphere of criminal drug dealing, it would be something that would be very negative for even our smallest youth, absolutely. And I was stating that, yes, this court has had many recent cases where you, in fact, did employ the dictionary, and I thought that People v. McCartney was very instructive, People v. McCartney was very instructive in this case, where this court did, in fact, use the Webster's Dictionary to define the term substance-containing methamphetamine when the defendant in that case was convicted of manufacturing over 900 grams of a substance-containing methamphetamine. And this court said, quote, if the legislator had intended to limit the application of the provision, it could have easily done so. In the absence of the legislator's express statement of such a limitation, we decline to read one in the statute. And also similar in the McCartney case, that it was not in dispute what the meaning of substance-containing methamphetamine meant, but the defendant simply contended that it was an absurd result. They thought it was absurd to punish a first-time or occasional small-batch manufacturer who does not even successfully create meth as a Class X felon or equally with a successful manufacturer. But this court again said that that was unpersuasive, the legislator has broad discretion in setting criminal penalties. And the McCartney court also addressed the use of outside statutory aids, declining to look at the Declaration of Policy, declining to look at the Preamble, the Statement of Legislative Intent, stating that this would create an ambiguity in an otherwise unambiguous statute. And again, this court stated that to the extent that any expressed language in the statute contradicts the Preamble, the statutory language controls. And this court also looked at the statutory tool of peri materiae and refused to apply it to another provision within that same statute, saying that they were different offenses targeting different conduct and that the defendant was mistaken in assuming that the sentencing weights for two discrete offenses must be calculated by identical means. Where that leaves this case is simply that when, according to this court, when a word is left undefined in a statute, we must assume that the legislator intended it to have its popularly understood meaning. And I would suggest to this court that popularly understood means nothing more than what the populace, what the people, understand the word to mean. And I would submit to you that the average person, every person sitting in this room, understands that a preschool is a school. And that is simply not an absurd finding. And without any kind of an absurdity, this court is not in a position to intervene to correct something that needs no correction, because there is no absurdity. The inquiry starts there and ends there at the popularly understood definition. And we ask that this court find so, and that this court restore the appellate court's reduction of defendant's conviction to a Class I felony. Thank you. Thank you, counsel. Counsel for the appellee. Good morning. Holly Stretland, Assistant Appellate Defender, on behalf of Appellee Anthony Young. May it please the court. The legislature intended the same definition of the term school in Section 407 that it enacted in the other portions of Public Act 84-1075. This definition, any public or private, elementary or secondary school, community college, college or university, does not include preschools. The term school is so broad that it is ambiguous. But the term should not be defined by simply looking to the dictionary. The best definition of the term school can be found from the words of the General Assembly themselves in Public Act 84-1075, or also by looking to the definition found generally in the Criminal Code. And we know the term is ambiguous and requires definition for multiple reasons. First, the legislature generally defines it each time it is used and provides a different definition in each context, such as the definition we find in Public Act 84-1075 and different more specific definitions as used in the school code and other legislation. Couldn't that indicate, to the contrary, that if the legislature wanted to limit it, they would specifically say so? I don't think so in this case, because even if you look to the state's definition, this broad definition by looking to the dictionary, the dictionary itself has multiple definitions. There isn't one plain, ordinary meaning of the term school. And so the fact that the General Assembly nearly always defines it and then again provides us a general definition in the Criminal Code to look to when it isn't defined specifically in a statute demonstrates they recognize that it is very broad and we need some specific guidance on where to narrow the term. If you were a realtor and a potential buyer asked you, are there any schools in this neighborhood, how would you answer the question if there was a preschool around the corner? I think generally the first instinct of a realtor would be to point out the public schools, the primary schools, the one that you're paying for with your taxes, what school district your child would be in, if that's the first thing you associate with buying a home. Additionally, they probably would begin to point out other institutions in the area as well as daycare centers. But I think the first instinct was generally what elementary, kindergarten, junior high or high school your child would be going to. Again, Owens and Goldstein are another good indication, as well as the appellate court decision in this case, of the fact that the term school is ambiguous. And each case, and these date from 1990, 1992, and then recently here in Young, each time the appellate court immediately determined that the term school required a definition. And each time the appellate court looked to the definition that was provided three times in Public Act 84-1075, and each time was specifically applied to a school zone within 1,000 feet of a school. The same area that's prescribed here in Section 407. So again, this is another indication that the appellate courts recognized immediately that the term was ambiguous and needed some narrowing. And the state's definition is just simply too broad. And it would lead to absurd results, such as including driving schools, barber colleges, dance academies, anywhere that instruction is given. Excuse me, counsel. Is it really that absurd to think that the legislature intended the statute to apply to preschools? Aren't preschools much more like the other things enumerated in the statute than truck driving schools or barber schools, barber colleges? I think a preschool does begin to start, if you did a factual determination, which was not done in this case. Preschool could very well be a daycare center. It's hard to know just by the name preschool, and that's all we are going on here. But each place, if you go on the state's definition, each one provides instruction. Each one would be some sort of organized institution where you'd have a pupil and a teacher. But again, some preschools, like the one on the building in LaSalle, they'd provide lunch, they'd provide daycare. I'm sure they have young enough children that they change diapers and do potty training. Potty training, again, is another form of instruction, but I don't think that would be analogous to what we do in elementary or secondary schools, junior high, community colleges, or universities. Playing off what Justice Thomas asked you, as I understand it, the statute protects schools, parks, public housing, churches, synagogues, nursing homes, even daycare facilities for senior citizens. Doesn't that indicate that the legislature wanted to protect the young and the old from the violence that is associated with drugs and drug dealing? Different statutes do have these indications, but in this statute specifically it did not include preschools, but we know, as cited in the brief, in different statutes, they specifically listed preschools separately, just as in some they specifically list daycare centers separately. So that indicates that the General Assembly recognized that there was a difference. And here, specifically in the amendment in 84-1075, when this was added to Section 407, that was focusing specifically just on adding this language about schools, and that is where in the other three portions of Public Act 84-1075 they focused narrowly here on secondary and elementary schools. Keeping with Justice Garmon, at least the start of her question, you point out in your brief that three-, four-, and five-year-old children who attend preschools are generally not at risk of being recruited into gangs or purchasing drugs or weapons, right? That's one of the things, one of the points that you make. But the statute also applies, just as Garmon just said, to selling drugs within 1,000 feet of churches, nursing homes, and senior citizen housing complexes, right? Correct. And isn't it true that senior citizens, nursing home residents, and churchgoers aren't generally at risk of being recruited into gangs or purchasing drugs or weapons as well? I think that would certainly be true for nursing homes and those types of groups as well. But the statute isn't focused exclusively on, the General Assembly was, especially for the school portion, looking at keeping schools as a safe place where the students aren't being tempted and recruiting and vulnerable for those activities. But there is, yes, there is an indication that we want these safe areas where there's a vulnerable population, but that's why these vulnerable populations were specifically listed and a church is covered or a nursing home is covered. But it doesn't include a playground or it doesn't include other areas where vulnerable... Well, you would at least admit, right, Counsel, that whether or not a particular group is actually at risk doesn't necessarily end their inquiry, does it? Certainly for locations inciting churches and other locations, that's true. They are not looking to whether or not a pastor would be recruited into a gang, but they still protect the area around the church, yes. But the crucial thing here is that a line has to be drawn somewhere in defining school. We have enumerated things such as the church or other areas that are specifically defined as areas we want to protect within these zones, but a line has to be drawn and it can't be extended to barber colleges or any type of institution where there's instruction given or even instruction given specifically to the young. There must be a line, and if you accept the state's definition, you do get into the evidentiary issue in the state's burden of proof where they have to establish in each case whether this is an institution where instruction was given. In this case, all we know is that the name of this institution is High Mountain Church and Preschool. Your opponent said that issue was not contested below and that it was agreed that it was a preschool. Are you saying that's not true? If it's not true, how was it raised? Well, defense counsel's main argument was simply that a preschool does not fall within the statute. Defense counsel did ask some questions to elicit testimony about whether the school was actually open and whether students were attending the school at the time, but you're correct, there was no inquiry into whether the age of the students or the type of instruction that was taught. He did accept just on the term that it was a preschool and challenged the fact whether a preschool at all could be considered falling within the statute. But if you took the instruction definition of the state, in future cases if this were contested, you'd have to have an evidentiary determination of whether the teachers, the students viewing the curriculum, determine if there is actual instruction going on. This would be a case-by-case inquiry. More evidence would have to be presented in every case and you'd have a preliminary determination each time. It's much simpler and much clearer to accept the definition in Public Act 84-1075, which was given to us by the General Assembly that provides a very clear and very distinct line of what is a school and what is not a school. Under that definition, it's very clear that High Mountain Church and Preschool would not be a school. Again, to protect this population, specifically the students here at High Mountain Church and Preschool, it's not necessary to determine that this preschool was a school. This was High Mountain Church and Preschool. If the state intended this to be a Class I offense, they could have charged and continued under the theory that the offense occurred within 1,000 feet of a church. Many preschools generally are located within churches, are located within other public schools or parochial school systems, and it's not necessary to distinguish them in that case because they are within 1,000 feet and still within a protected area. And again, whether this is what, whether it's a good idea and they're a vulnerable population that should be protected as are churches in other areas, the main question is whether that's what the General Assembly stated here in Section 407 and in Public Act 84-1075. And what the language here says is school, and as it was defined, and this is just one part of that whole public act, is that public act defines the area in these three other points as 1,000 feet within a school and school is a public or private elementary or secondary school, community college, college or university. And that definition simply does not include the preschool here. Finally, if there's any question or doubt about the proper definition to apply, the rule of lenity states that the question should be determined in favor of the defendant, Anthony Young. If there are no further questions, it is evident that the term school requires definition. The General Assembly provided that definition in Public Act 84-1075. The definition does not include preschools. Therefore, this Court should affirm the decision of the Appellate Court. Thank you, Ms. Jacobs. Your Honors, Counsel argues to this Court that the term school requires definition. But the definition that the term school requires is the one that the legislature intended it to have. And when the legislature leaves a term undefined, that we must assume that the definition intended to have was the popularly understood definition, which is not being disputed, that a preschool is popularly understood to be a school. Defendant also talks a lot about we have to draw a line, we have to limit it. It is not up to this Court to limit a term that does not lead to an absurd result. It is up to the legislature, if they so choose, to limit it. But the posture of which this case is in does not lead this Court to be able to be in a situation to limit a term, especially where there is no express intent by the legislature, if we are looking that far, where they actually said we don't want preschools included. But without an express intent, this Court has no ability, as it itself has stated, to limit the term. And I do want to just quickly address the issue of the truck driving school, the vocational schools. I would suggest to this Court that even if this Court were faced with an issue, if I was standing up here talking about within a thousand feet of a truck driving school, we wouldn't even get that far in the analysis whether or not it was absurd, because this Court has already suggested in race schools, Chicago v. Cummings, and in Coyne Electrical School v. Passion, this Court has already suggested that such vocational schools probably do not fall within the popularly understood definition of school, suggesting a distinction between education and training. So this Court might not even get that far if it was presented with a situation. But nonetheless, just because there is some school out there that could possibly be considered absurd, and not what the legislator intended based on the plain language of the statute, does not follow that a preschool is absurd. Those things are not mutually exclusive. A preschool, being defined as a school, is simply not absurd in any way. And I do want to correct one thing I believe that counsel misstated, that the appellate court found the term to be ambiguous. The appellate court did not find the term to be ambiguous. The appellate court did not address the term. The appellate court directly did what the Goldstein and Owens Court did, and went immediately to the legislative debate, to the debates violating the rules of statutory construction in which the first step they must take is to try to define the term based on the plain language. Again, where I leave this Court is that the popularly understood definition of preschool is a school. There's no question this Court has used... Before you conclude, there's no question. Could you directly address the argument that's been made here about Public Act 84-1075 in which four statutes, include this one, were amended, and within that Public Act a definition was provided that does not include preschools. Could you directly address that argument? Sure. Absolutely. The legislature, for whatever reason, during the course of the debates and, by the way, when they did discuss in the course of the debates the definition that ended up in three out of those four statutes, it was not when they were talking about this statute. It was when they were talking about one of the unit... So you're suggesting we should look to the legislative debates to figure this out? Oh, no, I'm not suggesting that at all. I'm trying to answer your question, which I thought was guiding me to this. In this one Public Act, the legislature addresses four separate statutes, including this one, and provides a definition. Why should we not assume, then, that the legislature expected us to use the definition that it was using in this Public Act for this statute? I would suggest to you that even if there's a possibility that that was an oversight, even if we acknowledge that there was that possibility, in this case, the way this case presents itself, that would be an oversight that the legislature would need to correct itself, because this Court is not in a position to make that correction, because we are not presented with an absurd finding based on that oversight. If it was indeed an oversight, which I am not, by any stretch of the imagination conceding that it is, because we don't know what happened from the debates to the statute. When the actual statute was written, we don't know what happened in between and why they chose to give three of the statutes a definition and keep one broad. Again, to reiterate the point, that is what the legislature intended when it left a term undefined. It wanted a broad definition. It did not seek for this Court to limit the definition, and the only circumstances in which this Court would want to do something like that is if there was an absurd result, which there simply is not here. Are there any other questions? Thank you very much. Thank you to both counsel for your arguments today. Case number 111886, People v. Young, is taken under advisement as agenda number 13.